No. 119,134

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS, EX REL., SECRETARY, DEPARTMENT FOR CHILDREN AND FAMILIES,
and C.M., A Minor Child, by and Through the Mother and Natural Guardian NIKOLE L.
WILKINSON, and NIKOLE L. WILKINSON, Necessary Third Parties,
*Appellees*,

v.

TRAIG J. MANSON,
*Appellant*.

SYLLABUS BY THE COURT

When a man fails to revoke a voluntary acknowledgement of paternity (VAP) form executed under K.S.A. 2018 Supp. 23-2204 within one year of a child's birth, a permanent father and child relationship is created between the man who signed the VAP and the child that cannot be rebutted by genetic testing.

Appeal from Shawnee District Court; LORI L. YOCKERS, judge pro tem. Opinion filed June 14, 2019. Affirmed.

*A. Victoria Chundak*, of The Law Firm of Tenopir and Huerter, of Topeka, for appellant.

*Philip L. Goetz*, contract attorney, Kansas Department for Children and Families, for appellee.

Before ARNOLD-BURGER, C.J., HILL, J., and STUTZMAN, S.J.

ARNOLD-BURGER, J.: When a man fails to revoke a voluntary acknowledgement of paternity (VAP) form executed under K.S.A. 2018 Supp. 23-2204 within one year of a child's birth, a permanent father and child relationship is created between the man who signed the VAP and the child that cannot be rebutted by genetic testing.

1

Traig J. Manson executed a VAP acknowledging C.M. as his son. When C.M.'s mother applied for State benefits, the State requested child support from Manson. Manson asked the district court for genetic testing. The district court held a hearing and determined that genetic testing was not in C.M.'s best interests. Manson appealed. The district court correctly denied Manson's request for genetic testing. Because Manson did not revoke the VAP within one year of C.M.'s birth, any genetic test results would be immaterial to whether Manson was C.M.'s father. The VAP created a permanent father and child relationship and Manson is required to support C.M. regardless of whether they are biologically related.

The decision of the district court is affirmed.

FACTUAL AND PROCEDURAL HISTORY

In September 2016, the Secretary of the Kansas Department for Children and Families (DCF) filed a petition for support alleging that Manson is C.M.'s father and owes him child support. In response to the petition, Manson said that he was not C.M.'s father. He attached the results of a DNA test to his response. Manson added that he was only involved in C.M.'s life until C.M. was one year old, at which time Manson received the DNA results. Additionally, C.M.'s mother, Nikole Wilkinson, was in a relationship with a different man whom C.M. called "Dad."

The district court conducted a *Ross* hearing to determine whether genetic testing was in C.M.'s best interests. See *In re Marriage of Ross*, 245 Kan. 591, 602, 783 P.2d 331 (1989) ("Prior to ordering a blood test to determine whether the presumed parent is the biological parent, the district court must consider the best interests of the child, including physical, mental, and emotional needs."). C.M. was two years old at the time of the hearing.

At the hearing, Manson explained that he allowed his name to be listed on C.M.'s birth certificate because at the time he did believe he was the father. However, while at the hospital Manson completed a genetic test from Walgreens which showed that he was not C.M.'s father. Because Wilkinson told him that she had nowhere to live, Manson allowed her and C.M. to live with him for about one year. During this time, Manson was not financially responsible for the child, although he sometimes helped out. Once Wilkinson moved out, his relationship with C.M. stopped. He argued that C.M. did not know who he was, and that he had not seen C.M. since Wilkinson moved out. The only reason this case arose, Manson argued, was because Wilkinson applied for welfare benefits and listed him as the father of C.M. even though she knew he was not the father.

Wilkinson told the court that she had information on another potential father, although her knowledge was limited to the man's name and his last known location. And Wilkinson mentioned yet another potential father, but she did not know his name. Wilkinson told the court that she had no problem with Manson removing his name from the birth certificate.

The guardian ad litem argued that Manson and C.M. had a relationship, and he did not think that disturbing the presumption of paternity was in C.M.'s best interests. The guardian ad litem noted that Wilkinson received state services. He asserted that it was in C.M.'s best interests that Manson be considered his father so that Manson would be required to pay child support. The guardian ad litem also stated that it would violate public policy to disturb the presumption of paternity because it would bastardize C.M.

The district court acknowledged the State's argument that it needed someone to pay child support because Wilkinson was requesting State services. The court discounted the genetic test because it was not admissible in court. The court held that once Manson signed the VAP, he became C.M.'s father. It added that Manson had one year to rescind

his signature, but he failed to do so. The court held that it was in C.M.'s best interests to disallow genetic testing and to maintain Manson as C.M.'s legal father.

Manson appealed.

ANALYSIS

Manson agrees on appeal that the district court was not required to hold a *Ross* hearing in this case. But he argues that the district court abused its discretion in determining that genetic testing was not in C.M.'s best interests. We agree that the district court did not have to hold a *Ross* hearing, but its decision to deny genetic testing was correct. Our decision is guided by the Kansas statutes. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

"An acknowledgement of paternity creates a permanent father and child relationship which can only be ended by court order. A person who wants to revoke the acknowledgement of paternity must file the request with the court before the child is one year old . . . ." K.S.A. 2018 Supp. 23-2204(b)(1). Manson executed a VAP to put his name on C.M.'s birth certificate, and he did not rescind the VAP within one year. This single fact determines the outcome of this case. The Kansas Supreme Court discussed VAP's and their legal effects in *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 392 P.3d 68 (2017). Thus, we will examine *Smith*.

The case began much like this one. The Secretary of Social and Rehabilitation Services (now DCF) filed a petition for support against Alonzo Smith in 2009 on behalf of I.M.S., a minor child. No one in the case asserted that Smith was I.M.S.'s biological father, but he did sign a VAP at the hospital shortly after I.M.S.'s birth in 2000. The VAP formed the sole basis for the State's claims. Smith denied paternity, asserted that another

4

man was I.M.S.'s father, and requested genetic testing to prove the other man's paternity. Smith also sought to revoke the VAP. The district court held that Smith was I.M.S.'s father based on the VAP. The district court denied Smith's motion to revoke the VAP as time-barred because Smith failed to revoke the VAP within one year. Finally, the district court held that it was in I.M.S.'s best interests to find that Smith was I.M.S.'s legal father.

The Court of Appeals reversed the district court. *State ex rel. Secretary of DCF v. Smith*, No. 114,306, 2016 WL 3031277, at *9 (Kan. App. 2016) (unpublished opinion). The court acknowledged the one-year limitation on revocation of VAP's imposed by K.S.A. 2015 Supp. 23-2204. But the court noted that K.S.A. 2015 Supp. 23-2208(a)(4) provided that a VAP merely creates a *presumption* of paternity that the signer could rebut by clear and convincing evidence. The Court of Appeals concluded that because both Smith and I.M.S.'s mother confirmed that Smith was not I.M.S.'s father, Smith successfully rebutted, by clear and convincing evidence, the presumption of paternity that the VAP created. In other words, "the district court erred by construing the [VAP] as a binding legal obligation that can never be rebutted, even by stipulation of the parties and findings of fact made by the court itself." 2016 WL 3031277, at *9.

The Kansas Supreme Court reversed the Court of Appeals. The court noted the apparent conflict between K.S.A. 2015 Supp. 23-2204, which creates a permanent parent child relationship, and K.S.A. 2015 Supp. 23-2208(a)(4), which "merely created a rebuttable presumption of such a relationship." *Smith*, 306 Kan. at 57. To resolve the "arguably conflicting statutes" the court "consider[ed] the provisions of the entire act with a view toward reconciling and bringing the various provisions into harmony." 306 Kan. at 57. The court found that the Legislature clearly "intended to impose strict limitations on the two individuals who sign the VAP form" and that "[i]t seems contrary to this intent to allow either of those parties the ability to sidestep the VAP's terms—to effectively seek its revocation—by rebutting a presumption or raising a conflicting presumption, such as would arise through genetic testing." 306 Kan. at 57-58.

5

Although the court chose not to directly address whether a *Ross* hearing was necessary to determine whether genetic testing was in the best interests of the child, the court certainly suggested that it was unnecessary. 306 Kan. at 59. The court's comment that a party cannot "sidestep the VAP's terms" through genetic testing supports this conclusion. 306 Kan. at 57.

Based on *Smith*, the district court did not err in denying Manson's request for genetic testing. Even if the test results showed that Manson was not C.M.'s biological father, Manson would still be obligated to pay child support because the VAP created a permanent father and child relationship. 306 Kan. 40, Syl. ¶ 3.

Note that a *Ross* hearing to determine the best interests of the child may be necessary when a man not subject to a VAP is seeking to establish paternity over a child that another man has voluntarily acknowledged paternity over. The Kansas Supreme Court explained:

> "Others acting on behalf of the child, including a biological father, could not use K.S.A. 2016 Supp. 23-2209(e) to attack the validity of the VAP, and that subsection's 1-year limitation period would not apply. Moreover, that person is not a party to the VAP, which means that person has not agreed to the VAP's terms, including the term creating the permanent relationship. Those statutes do not foreclose others acting on behalf of the child using other procedures and seeking other remedies available under the Kansas Parentage Act, including raising a competing presumption under K.S.A. 2016 Supp. 23-2208." 306 Kan. at 59.

That is not the situation here. No one here, other than Manson, is trying to disturb the permanent father and child relationship created by the VAP. Manson bound himself to the commitments of fatherhood when he signed the VAP. By failing to revoke it within the one-year statutory period he now must support the child.

6

If a district court reaches the correct result, we will uphold its decision even though it relied on the wrong ground or assigned erroneous reasons for its decision. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015). Even though it held an unnecessary *Ross* hearing, the district court correctly rejected Manson's request for genetic testing. As a result, its decision is affirmed.

Affirmed.